579 P.2d 601

**INSURANCE COMPANY OF NORTH AMERICA, a Pennsylvania Corporation, Appellant,**

v.

**GENERAL ELECTRIC CREDIT CORPORATION, a New York Corporation, Appellee.**

**No. 1 CA–CIV 3507.**

Court of Appeals of Arizona, Division 1, Department C.

May 9, 1978.

98

Black, Robertshaw, Frederick, Copple & Wright, P. C. by Jon R. Pozgay, Phoenix, for appellant.

Streich, Lang, Weeks, Cardon & French, P. A. by Earl E. Weeks, Don P. Martin, Phoenix, for appellee.

## OPINION

SCHROEDER, Judge.

This is an action by appellee, General Electric Credit Corporation (GECC), to recover against a motor vehicle dealer license bond required to be posted under A.R.S. § 28–1305(B). The bond, in the amount of $10,000.00, was issued by appellant, Insurance Company of North America (ICNA), as surety on behalf of All State Trailer Sales, Inc.

GECC was All State's inventory financer under an agreement entered into in 1972. That agreement gave GECC a security interest in the inventory which it financed and the proceeds of the sale of that inventory. The agreement further provided that upon a default "all indebtedness secured hereby shall become immediately due and payable at [GECC's] option without notice to [All State] and [GECC] may proceed to enforce payment of same and to exercise any or all of the rights or remedies afforded . . . by the Uniform Commercial Code, as in effect in [Arizona] . . . ."

On November 13, 1973, All State sold from its inventory a vehicle which had been financed by GECC. The proceeds of that sale consisted of two other vehicles taken in trade. The trade-in vehicles were in turn sold by All State and the proceeds of those sales retained by it.

In the meantime, after the sale of one of the trade-in vehicles, but before the sale of the other, the Superior Court of Maricopa County placed all of All State's assets into the hands of a receiver. GECC originally filed a cross-claim joining in the request for appointment of the receiver. It noted that while it had the right, by virtue of its security interest in the vehicles which it had financed, to take possession of such vehicles, it preferred instead to have the business carried on by a receiver. In an amended crossclaim, some months later, GECC sought to recover against the bond, claiming that the disposition by All State of the two trade-in vehicles constituted a conversion. The trial court granted summary judgment for GECC, and the insurance company appeals.

The dispositive questions in this appeal turn upon the language of A.R.S. § 28–1305(B), which provides that the dealer license bond issued by appellant "shall inure to the benefit of any person who suffers loss by reason of any unlawful act of the licensee." This language has given rise to repeated litigation and both Divisions of this Court have issued opinions involving claims by inventory financers. *Western Surety Co. v. Union Investment Co.*, 116 Ariz. 31, 567 P.2d 347 (Ct.App.1977); *Empire Fire & Marine Insurance Co. v. First Nat'l. Bank of Arizona*, 26 Ariz.App. 157, 546 P.2d 1166 (1976); *Autoville, Inc. v. Friedman*, 20 Ariz.App. 89, 510 P.2d 400 (1973); *United Bonding Insurance Co. v. Swartz*, 12 Ariz.App. 197, 469 P.2d 89 (1970). These cases are not easily reconcilable and reflect a tension between the decisions of this Division and that of Division Two. Decisions of both Divisions, however, recognize that in interpreting the language of the statute, our Supreme Court has defined the term "unlawful act" as " 'any wrongful act (*not involving a breach of contract*) for which a civil action will lie. * * * ' " *Commercial Standard Insurance Co. v. West*, 74 Ariz. 359, 363, 249 P.2d 830, 832–33 (1952) (Emphasis supplied). The decisions also recognize that a conversion is an "unlawful act" and further, that the essence of a conversion is wrongful interference with another's ownership or right of possession.

Appellant, relying upon the opinion of this Division in *Autoville*, argues that while GECC undoubtedly had a security interest in the vehicles, it had no possessory interest such as to give rise to an action for conversion, and that its relationship with All State at all relevant times was simply that of creditor-debtor. Therefore, it argues that the sale of the vehicles and failure to turn over the proceeds to GECC, is no more than a breach of contract within the meaning of *Commercial Standard*.

GECC, on the other hand, points to its security agreement and the provisions of the Uniform Commercial Code adopted in Arizona, which would have permitted GECC in November, 1973, to claim possession of the vehicles. GECC argues that the subsequent sales by All State amounted to conversions, and relies upon *Empire Fire & Marine*, decided by Division Two.

We assume, for purposes of this appeal, that All State was in default under its agreement with GECC at the time of the November 13, 1973, sale and the subsequent resales of the trade-in vehicles. Under the terms of the security agreement, upon default, GECC had the right to "exercise any or all of the rights and remedies" afforded by the Code. One of those rights, as set forth in A.R.S. § 44–3149 (U.C.C. § 9–503) is the right to take possession of the collateral upon default.

■ However, the right to take possession is but one of several rights afforded unsatisfied secured creditors. A.R.S. § 44–3147 (U.C.C. § 9–501), expressly states that all remedies provided by the code and the security agreement are "cumulative." An inventory creditor may not wish to disrupt business operations by seizing the collateral

and may, instead, choose to collect the debt utilizing judicial remedies. In that event, continued sales of inventory by the dealer could not be considered unlawful. As explained in one leading treatise,

"[u]nder the Code the creditor may choose between two basic methods of getting his money out of a balky debtor. First, he can seize the goods subject to his security interest and either keep them in satisfaction of the debt or resell them and apply the proceeds to the debt. Often a resale will result in a deficiency for which the debtor is usually liable. Alternatively, the creditor can ignore his security interest and obtain a judgment on the underlying obligation and proceed by execution and levy." White and Summers, Handbook of the Law Under the Uniform Commercial Code, § 26–4, at 962–63 (1972) (footnote omitted).

However, a creditor cannot pursue all remedies at once.

"The remedies may be 'cumulative,' but at some point the secured creditor must choose which remedy he will utilize and pursue that route to fruition. In other words, a secured creditor may first attempt to enforce his rights by one method and if that proves unsuccessful follow another one, but he should not be permitted to harass the debtor by simultaneously pursuing two or more of the several avenues of attack open to him." *Id.* at 965 (footnote omitted).

■ In this case, GECC, at no time prior to making this claim against the bond, chose to exercise its right to take possession, nor did it at any time make any demand upon All State for possession. *Contrast, United Bonding*, where such a demand was made. In fact, GECC, in its original cross-claim in Superior Court in December, 1973, expressed a desire not to assert any possessory interest but opted instead to support appointment of a receiver to assume possession of the inventory and carry on All State's business operations.[1] We, therefore, conclude that GECC had no actual ownership or possessory interests in the vehicles claimed to have been converted. The mere existence of an option to claim possession as one of several possible remedies is not a sufficient possessory interest to sustain damages for conversion.

■ This case is, to some measure, factually different from *Empire Fire & Marine*, in which the plaintiff, according to the Court's opinion did not manifest an intention to pursue remedies other than the "self help" remedies of A.R.S. § 44–3149. Appellee, however, interprets that opinion as holding that any unsatisfied secured creditor of a defaulting automobile dealer is automatically entitled to claim against the dealer's license bond. We disagree. We do not believe such creditors are within the class of persons intended to be protected by the bond requirement. As a matter of policy, we see no justification for adding the bond to the arsenal of remedies afforded a secured creditor by contract and by the Uniform Commercial Code.

In view of our conclusion that the decision of the trial court must be reversed it is unnecessary to reach the other contentions raised by appellant.

The judgment is reversed.

DONOFRIO, P. J., Department C, and OGG, J., concur.

---

1. It is true that the sale of the second trade-in vehicle in December, 1973, was in defiance of the restraining order appointing a receiver and proscribing further transactions by All State's employees. However, that "unlawful act" was in violation of the possessory rights of the receiver and not of GECC. It was not a conversion of GECC's property, and GECC has based this action upon a claim of such a conversion.